Okay, next up we have Barrs v. Auto-Owners Insurance Company Alright, we'll hear first from Mr. Kendall Thank you, Judge. It's a pleasure to be here. Consider it a privilege and an opportunity to be before the Court this morning. My name The insurance dispute arises from a consent judgment that was entered in favor of Mr. Barrs, who is the attorney in this case. Essentially, Auto-Owners Insurance Company issued a commercial general liability policy to Counsel, you can do what you want with your time, but I think we've all reviewed the record, but you're welcome to spend your time however you'd like. Okay, I'll move right along then. Your Honor, the basic question in this case is whether the policy covers a consent judgment that was entered in favor of Mr. Barrs. We think that the trial court, the district court, entered summary judgment incorrectly and that that summary judgment should be reversed for basically two reasons. First is that the consent judgment was not allocated between covered and non-covered claims. And the second is that we think that none of those claims were covered. So let's take them in order. Can we start, if we're starting with your first one, let me just start right out of the box. Does your answer to the first question depend on whether Georgia or Alabama law governs this particular question? Yes. Okay, and so you agree that if Georgia law governs, that it didn't have to be apportioned. No, we do not agree with that statement. So then it doesn't depend on whether Georgia or Alabama law governs. Well, it depends in the sense that there is Alabama law that's directly on point and that when you look at Georgia law, the Georgia law is not directly on point. In fact, the trial judge indicated in his second report that was entered in the case that the district counsel was unable to find any Georgia law that was directly on point with respect to an unallocated judgment. But don't we have to find Alabama law that is codified? The judge, after reading and discussing with counsel, the judge found that essentially in Georgia, he's a judge sitting in diversity. He applies the choice of law of the state of the foreign state. The choice of law in Georgia is Lex Loci Contractus, right? And so there's an exception and there's this body of federal law essentially that identifies the presumption of identity rule. And under that rule, a diversity district court can apply the foreign law if there's no statute from the place where the contract was entered into that applies. So the court decided, well, even though this policy was issued in Alabama, I'm going to apply Georgia law based on the presumption of identity rule because there's no Alabama statute that governs whether an unallocated consent judgment has to be paid under an insurance policy. So then the judge decided that there was no Georgia law on point. So this presumption of identity rule is, well, the judge can decide what the common law is in Georgia because the common law should be the same essentially everywhere. It's identical. And so I don't have to look to Alabama common law to decide what the Georgia common law is on this issue of an unallocated consent judgment. But the reality is, and the court found expressly, that there is no Georgia law on point with respect to that. So that's why our position is that that should revert back to Alabama law. So I think I'm confused. You mean like as a formal matter, if there is no Georgia law on point, you revert specifically to Alabama? Or you think, well, okay, no Georgia law on point, maybe we should look around more generally? I think it should be that, first of all, you would take into account the fact that this policy was issued and delivered in Alabama. That means that it was intended by the parties to be performed in Alabama, number one. And number two, Georgia law is clear that when you can't find anything in the Georgia common law, you can look to sister jurisdictions like Alabama. Right. But the question we have to ask, is it not, if we're looking at a Georgia question of law, A, is there anything directly on point? Everybody agrees there isn't. B, are there parallels? Were there some insight given to what the Georgia courts would do? Your answer is yes, there's some things on it. C, if we look elsewhere, we find considerable learning that would help us decide how the Georgia courts would likely decide this issue. That's basically what you're saying. And if you take all of that together, the best answer is the If you don't allocate, then there's a real problem. Correct, Your Honor. And that is based on the fact that, first of all, there are two sister jurisdictions, Florida and Alabama, that the Georgia court would look at, number one. And number two, there is this concept in Georgia that already essentially acknowledges in the context of attorney's fees, for instance, that if you have attorney's fees awarded and there's a multiple count verdict or a multiple count judgment, those attorney's fees have to be allocated between the claims that attorney's fees are warranted on versus claims that attorney's fees aren't. And so when you take that substantive law of Georgia, which recognizes this concept that an unallocated award is problematic, and then you compare it to the sister jurisdictions of Florida and Alabama, Alabama being extremely important in this case because that's where this policy was formed, made, and delivered, then when you take all of those things and sort of, you know, look through that lens or those various lenses, you can only reach really one result, which would be that Georgia courts can follow, you know, that concept, that legal reasoning that's been espoused numerous times in Florida and numerous times in Alabama. I think the, I don't want to get you too hung up on this, but the part of your argument that I'm having a hard time with is that once you've been through this sort of like branching tree, the eerie, sort of the, you know, the eerie tree, and you get to Georgia, you, like, come to the end of that analysis and the answer is Georgia, I understand that you might say, okay, Georgia's not, we don't have any Georgia law perfectly on point, so we're going to look around. We're going to look to Alabama, Florida, Arkansas, Louisiana, Tennessee, the restatements, you know, sort of AMJR or whatever. But I don't think that there's any room in that analysis to say, and don't forget Alabama is sort of like important to this transaction, and so we're going to kind of privilege Alabama's answer to this question. I don't really think that follows. Well, Your Honor, it follows to the extent that auto owners and the insured, who's not present in the appeal, entered into the contract in Alabama. And so, but for the presumption of identity rule, Alabama law would apply. And but for the fact that Georgia doesn't have any law directly on point, Alabama... Right, but the question, the question we face is what would the Georgia courts do? We're sitting, we're eerie bound to do our best to apply Georgia law as we think the Georgia courts would decide it if they haven't given us a direct answer to the direct question. It seems to me you can say Alabama law is persuasive, it's instructive, and the Georgia courts would likely file it, follow it because of its persuasiveness. But what I don't think you can say is that somehow, because it's from Alabama, and given the circumstances in this case, it gets extra weight. That's, I think, the point that my colleague is trying to make. But you said there were three reasons. You've only highlighted one. What were the other two? Well, there's also the argument that we made in this appeal that the court just got the coverage analysis wrong anyway. And so, auto owner's position is, is that setting aside this unallocated judgment, that the court actually erroneously found that any part of the judgment was covered. So there were two types of damages that formed the basis of the consent judgment. One was the theft of lumber, and one was damage to wood and lumber during the deconstruction process of this mill. So the court found correctly, auto owner's believes, that damage during the reconstruction or deconstruction process was not covered. The court then, in auto owner's opinion, erred in finding that the theft of the lumber was that the court ignored the consent judgment that was entered and the counts in the underlying complaint that AAA General admitted to. The work was actually done by a man named Hood, and AAA General agreed to four counts in the complaint. One was negligent deconstruction. One is vicarious liability. The other two are basically negligent retention, negligent supervision. In admitting to those counts in the complaint that had been filed, AAA General admitted that Hood was essentially its employee or that at a minimum it was under its direction and control, similar to an employee. What about the fact that the exclusion, I gather this is where you're going and I'm trying to sort of help you advance the clock a little bit, but what about the fact that the exclusion applies only to employees acting within the scope of their employment? I don't see that you've made even an argument in your brief that Hood, in stealing the lumber, was acting within the scope of his employment. Well, there's two parts to that. One is that our argument is essentially that there's no exclusion based on an employee. It's that the policy only covers property damage caused by an occurrence. An occurrence has to be accidental. In theft, there's nothing accidental. But I thought the occurrence had to be accidental from the policyholder's perspective, right? So this, I mean, surely it wasn't a surprise to Hood that he stole the lumber, but it must have been a surprise to AAA that their employee stole the lumber. Yes, Your Honor. There's two parts to that. One is the occurrence language, which is in the insured agreement, and it's not an exclusion. And then there's an exclusion in the policy that does say that the policy doesn't cover property damage expected or intended by the insured. So that's where this concept of the employee comes in. And we did assert in the accounts that AAA admitted to that they admitted that he was in the course and scope of their business. They didn't say course and scope of employment. It says that, you know, AAA employed Hood. But isn't the real question whether Hood is an insured? I mean, isn't that really the question? Because, I mean, if Hood is an employee, he's an insured. Well, there are two parts to it. One, he has to have been an employee, and two, he has to have been acting within the scope, right? Correct. So in this case, we know he wasn't acting within the scope, even if we assume away the employee business of it, because there's no way that stealing is within the scope of his employment. Two things, Your Honor. One is that one of the accounts that AAA admitted to was vicarious liability. The others were negligent hiring and retention under Georgia law, applying the law that the judge decided he needed to apply. I mean, you agreed that you weren't contesting liability. So now it's just a coverage question. That's right. We're not contesting liability. It's a coverage question. But you can't admit to vicarious liability for someone who wasn't in the course and scope of employment. Those two concepts are contradictory by their very nature. If they admitted vicarious responsibility for what Hood did, then they admitted per force that he was in the course and scope of his employment. Otherwise, you would never admit to vicarious liability. Thank you. Thank you, counsel. All right. Next, we'll hear from Mr. Dubberly. Good morning, Medicaid Police Court. My name is Bruce Dubberly. I represent the appellee, Earl Morris, in this matter. And I ask the court to affirm the district court's findings that, one, Mr. Morris' damages that concern stolen wood and lumber arising from the negligent supervision of AAA over its employee, contractor, agent, whatever language they used. And two, that the district court did not err when it ruled that an insurance company who denies coverage to an insurer at the outset does not get to go back after a judgment has been entered to undo that judgment and relitigate the merits of that. So here we have a settlement agreement that would reduce the consent judgment. That settlement agreement has been subject to some of the discussion here already today. And that settlement agreement accounts for the loss of wood for a year that was taken by hood under the supervision of AAA. Now, when we go to the first issue here, which is coverage, as was alluded to. So the issue of coverage comes down to was it a property damage and was it an occurrence? Well, the property damage issue is pretty clear and clean. It was Mr. Barr suffered a loss of use. And under the policy, property damage is defined as a loss of use of property that hasn't been physically damaged. And here we have clear loss of use of Mr. Barr's wood and bricks that were taken from the property by hood. Second problem we go to is an occurrence. And as the court alluded to a moment ago, the key issue here is, number one, an occurrence in the policy is defined as an accident. An accident is not defined in the policy. But Georgia courts have defined an accident generally to mean something that occurs without the standpoint of the insured. Well, going even further, pull this up real quick. To the case in the northern district, Florio, it narrows down the analysis to not only does it have to be without the expectation of foresight or design, but it fills in the gap that it From the standpoint of the insured, which is AAA here, hood stealing the wood was not part of the design. It wasn't part of the specifications of their duties. It wasn't something that has been, no testimony or evidence has been presented that AAA desired for hood to take this or expected it in any way, shape or form. Can I direct your attention to something that your colleague on the other side of the aisle said? And that is, or at least something that I guess comes from it. He argued that your client, or actually that the company here had conceded that hood was acting as an independent contractor, but that they also had vicarious liability for him, right? That's the concession in the settlement agreement? Yes. Is that right? That's correct. Okay. And so on the one hand, they're not contesting liability, but on the other hand, if that were in fact the case, would there be a problem for the recovery under the insurance contract? Because it seems like there might be. And if that were the case, then if we just separate out liability from coverage, which are two different issues, is that always going to be the case in a settlement agreement like this that liability can't be contested after a settlement? And if so, what is there to stop parties from settling on one basis and claiming coverage on another? Let me back that up a little bit. Yeah, sorry. That's okay. So I would phrase it like this. I would say that in a case, in a complaint, normally there are many counts that go into a complaint that try to cover a spectrum of In this situation, it was in that alternative that vicarious liability was pledged. In the event, negligent supervision doesn't work out. In the event, negligent hiring or retention doesn't work out. It's just one of the bases to account for liability. That's correct. But ultimately in this matter, we have shown, it's been argued, that Mr. Morris-Dandy is concerned that stolen wood and property that amount to $820,000 and that AAA did not give him that direction to do so. That's the vicarious liability argument. Maybe something you can bring up and point to in the complaint, but in the briefing and the arguments, there's never been any evidence that AAA directed him to do that or gave him the leeway to do that. That wasn't in the course and scope at all, other than that blanket admission from a settlement. That wasn't exactly litigated, if you get what I'm meaning by that. It was a blanket settlement. We agree. Settlement is a blanket issue. We admit to one through four, but a part of that four are the negligent hiring and negligent retention. The negligent hiring and negligent retention are negligence by itself is a class of wrongs that is non-intentional by nature. But I guess, maybe let me see if I can make it a little bit more of a general question. Can the terms of the settlement agreement ever be contested as far as liability goes by an insurer in this situation? Not in this situation. Right. Okay. So that being the case, what is there to stop? I mean, I guess if it were entered into bad faith, then you would have that argument. The insurer would have that argument. But, I mean, it seems like, I guess my question is, what is it that you can do to avoid having the problem of agreeing to liability on terms that are not covered by the insurance policy, and then arguing something completely different to obtain coverage from the insurance company? Do you understand what I'm saying? I do see what you're saying, but I would argue also that it's not completely different. It's part of a whole argument, and it's just an aspect of that argument. However, I would also note that when an insurance company refuses to defend an insurer without a reservation of rights at the outset and refuses to provide them counsel, the only thing they preserve at that point is no longer arguing liability. It's only to argue issues of coverage and whether or not losses under those covered losses are, excuse me, and whether the damages under that are covered losses. Right. Although, that sort of sets up an insurer who thinks that there's no coverage in a little bit of a catch-22, arguably, right? Because they can either participate, I guess they could reserve their rights, right? Yes, ma'am. Yes, Your Honor. Okay. Can I ask one follow-up question just to make sure that I'm tracking? I'll confess that as I came into the argument, I was thinking that the insurance company's real argument here was that you admitted in the settlement agreement, reduced to a consent judgment, to negligent hiring retention supervision. That all sounds very employee-ish, right? And now, as a coverage matter, you're saying, wasn't our employee. And they're saying, can't do that. Now, in sort of round two, in questions to your adversary, we say, yeah, but what about the fact that employee or not, this guy wasn't acting in the scope of his employment. Stealing lumber is within the scope of his employment. And their response, as I hear them, is to say, yeah, but don't forget, in addition to negligent hiring supervision and retention, there was also an admission to vicarious liability. And as a matter of employment law, agency law, whatever, you can't be vicariously liable for the acts of your whatever, employee, independent contractor, agent, whatever, unless that person was acting within the scope of his or her employment or agency. So on the vicarious liability admission, now his position, I think, is you've admitted to the scope question. Is that wrong? I would disagree, Your Honor. I would disagree. I would say that you can have somebody be within the course and scope of your employment, for instance, in the negligent deconstruction counts. In those negligent deconstruction counts, Hood would have been within the scope and course and scope of his job when he did not perform the job in a workmanlike manner. And the court excluded faulty workmanship under our initial MSJ briefing as something that's not covered under the policy. What remained were the stolen wood items and the issues that occurred outside the scope. So at the same time in this case, I think it's important to understand that Hood is both within the scope for negligent deconstruction and outside the scope for the theft of the wood and lumber. I'd like to go back to where your colleague began, that the consent judgment included within its ambit both damages that were covered and damages that weren't. And yet the district court entered final judgment in the amount of $557,500 as an award, and we don't know how much of that was for a claim that you really had and for a claim that you necessarily couldn't succeed on. And don't you ultimately have the burden of establishing that the damages award was covered? That's correct, Your Honor. So how do you get around the problem that somehow embedded in this $557,500 award is a sum of money for something that you're not entitled to recover a dime on, on this policy? To answer your question, I'm going to back up just a little bit. So for the district court here, who I believe, you know, made the right decision in the application of Dowse and Koblentz, have determined that once an insurer, those cases stand for the proposition that once an insurer refuses to defend its insurer, it no longer gets to go back and relitigate the merits of the case that it refused to participate in. I think that also applies to settlement agreements. They had the opportunity to be a part of that settlement agreement and they negotiated what was in and what was out of that settlement agreement and they waived that by refusing to defend their insurer. But to the direct point, Your Honor, we presented testimony in the underlying case of the district court from our, from our client, who has over 40 years of experience in the business and with personal knowledge of the materials on the property about its valuation. And the stolen wood alone, stolen was negotiated. It wasn't a random number they picked. Obviously, we didn't have the person who took the wood here with us. So there were some issues as far as So your point is it doesn't even matter what we used because, because even if we apportioned it, they would be entitled, your client would be entitled to over $800,000, but we only settled for $557,000. Correct. Well, that was the evidence you presented, but the consent decree was for $557,500. Yes, Your Honor. And that's what the court put its imprimatur on and said, okay. Yes, Your Honor. We don't know whether that was because he was giving X, Y, and Z for theft of lumber and other materials and he was giving some other sum for negligent deconstruction, let's say, which fell outside of the ambit of the policy. Are you, and excuse me, I'm going to ask for some clarification, are you referring to the judge who gave the consent order? I'm talking about we just don't really know how this $557,500 award was created and we know that you have the burden of showing that you're entitled to this based on the policy and everybody agrees that you're not entitled to some portion for negligent deconstruction and we don't know how much that was either. Yes, Your Honor. Now, in the district court level, we were asked to bifurcate the issues into coverage and then covered loss, what amount of the damages are covered. In that argument and in that portion of the case, we presented evidence that we used in the underlying case to get to the amount of $557,000 and that was Mr. Barr's own valuation of his lumber and wood that was stolen. But I think, and obviously Judge Marcus can correct me if I'm wrong, but I think what the judge is asking is you might have presented evidence that it was worth over $800,000, but that doesn't mean that the entirety of the $557,500 judgment in the end was for that $800,000 loss. It's possible that maybe you agreed to modify that to say just randomly $400,000 for that loss and the rest of it was for the damages to the wood, which are not recoverable. So the question is not whether you would be entitled to more than, to at least $557,500 on the theft loss if you had proceeded, but rather whether you, that's what you actually agreed to in the settlement and you haven't shown evidence of what was agreed to in the settlement as far as what's covered. Do you want to address that? In the underlying case, there was evidence, excuse me, there were, in the district court's case, we discussed evidence that was considered, we discussed negotiations that were considered in the making of the settlement agreement and the entire figure was up to $1.2 million to include faulty workmanship and things of that nature. And I get your question. I'm not trying to sidestep it by any means. I'm just saying at this level, the opportunity to litigate the settlement figures and the settlement amounts to be apportioned was a way of not spending money, excuse me, to defend their insurance. Number two, I think as we discussed earlier. Right, but the question isn't, the question isn't a challenge to how much was allocated. The question isn't how much, isn't really a challenge to what your losses were on the theft. The question is what you allocated to losses on the theft in the settlement. And that's the question that we would need to have evidence on. Does that make sense? It does. And I would go to that at the time the settlement agreement was entered into, there was no obligation for Mr. Bars or AAA to, in a case sitting in Superior Court, or sorry, excuse me, the Middle District of Georgia in Macon, there was no obligation for them to apportion the settlement agreement at that point. There's no Georgia law that requires them to do that. And so what we would do here today is we would have the insurer be able to deny coverage and a defense to its insured, have that insured hire its own counsel, go through litigation for nearly two years, enter into a settlement agreement, and then after that, and have that settlement agreement reduced to a judgment, and then allow the insurer to come in and undo it because they want to get, now they want to be a part of it, and they want to litigate whether it's X percent to this or X percent to that. And that's just not a requirement. Normally, if you had a problem like this kind, a jury comes in with a verdict, and they give a lump sum, but there are four distinct claims. One sounds in contract, let's say, and the other sounds in tort. And it turns out that one of those claims will not be sustained. Contract claim is no good. There's a tort claim that is good. There's a million dollar result. We can't tell how much of the jury verdict was apportioned to A as opposed to B. We could send it back and have that issue resolved on round two in the trial court. You can't do that here. There's nothing to send back. There's no one to send it back to. The parties were different. They weren't completely coextensive with the parties in this suit, so we're stuck with a lump sum that includes some funds that are properly allocated, some funds that are not, and we can't tell which. Now, as I see the law, the burden rests with you. And if you can't untangle it, don't you lose? What am I missing here? That the burden doesn't rest with me in that regard precisely because the insurance company refused to defend their insurer. They no longer get to come in and challenge the basis. We presented evidence that supports the settlement agreement, and now they're trying to come in and say, well, because some of the claims are not covered or may not be covered that were mentioned in it, now all of them are not covered. And that's not Georgia law, and there's no obligation for the parties there to that settlement agreement to go to that and make sure it was going to be that way. They should have defended under a reservation of rights and provided a defense to their counsel because if that's their practice, if that's what they're used to, then they would have been able to guard against that, but they refused to do that. Thank you, counsel. Thank you. All right, Mr. Kendall, you've reserved three minutes. Thank you, Your Honor. In Georgia, in really any of the sister states that I'm aware of, an insurance company is entitled to disclaim coverage altogether, and it's not saddled with this draconian result that if the settlement agreement is not covered, then they're a settlement agreement or verdict that's not covered just because they didn't defend or issue a reservation of rights. The insurance company has a right to disclaim coverage. Let me, I guess, how much was there in damages claimed for the damage to the wood? Initially it was $25,000. I know, but ultimately what was the amount? I think Mr. Barr submitted an affidavit for $800 and something thousand dollars. That's different. That's the theft. Then there was damage to the wood, which is excluded. We don't know. There's no allocation whatsoever. I realize there's no allocation for the award, but what I'm trying to find out is what was the amount that was, is there any evidence of what was the amount that was claimed? There you are. That is to say, to sharpen the question, just so you understand the thrust of it, the negligent deconstruction claim, how much? Was there a sum? Was there a figure? There you are. Ever offered? That's not where we're going. But back to the seminal question, which is who... I'm sorry to interrupt again, but in the, so in the liability part, not the liability, but the damages, the amount part, the bifurcated proceedings below, there was evidence that was offered that there was more than $800,000 in damages from the thefts, right? Correct. And just to be clear, nobody presented any evidence about, including you, about what was claimed as the value of the damages to the parts that were not covered. Correct. But... So if those were the, I'm sorry, it was their burden to show that it's covered, but still, if those were the only damages claimed, what basis do we have to conclude that there were damages from the damage to the wood that were included in the settlement? Because the district court held that, and it has not been appealed by Mr. Bars. So in the original order that was entered in the case on the bifurcation, there was an initial summary judgment on coverage because the trial court recognized that, although we couldn't dispute liability, we could still dispute coverage. And in that... And so what you're saying is there couldn't be coverage unless there were some kind of damages, right? Say that again, I'm sorry. The only way there could be coverage is if there were some kind of damages. Even though we don't know what the damages were, there had to have been damages because the district court found coverage. No. Well then, well... There had to be damages for both the deconstruction damage and for the theft because the district court ruled in its summary judgment order that's not been appealed that $557,500 consent judgment was based on both of those types of damages. And then it went on to hold that... Well, that's what I just asked you, and you said no. I'm sorry. That's okay. That might not have been clear. That's all right. So, yes, the district court did find that that judgment, that the $557,500 judgment, included both damages for deconstruction of the mill and damages for the theft of the lumber and then sent us off to alibi, right? If the district court was going to say, as the appellee contends today, that you didn't do what you were supposed to do, you know, you refused to defend and, you know, you let this, you know, insure it out there and you disclaimed coverage and so you're stuck with it, then the district court could have done that in the first order, right? The district court didn't have to say, well, I'm going to decide what's covered and what's not covered. You're just stuck with it. The trial judge knew that we were entitled to contested coverage, and they haven't appealed that issue, and he knew, based on the settlement agreement and the consent judgment, that that settlement agreement and that number that's been now awarded in favor of Mr. Bars included both non-covered claims. And what we are left with today is exactly what Judge Marcus has kind of keyed on, which is we're just speculating now as to what's covered and what's not covered, and that's the appellee's burden. All right. Thank you, counsel. Thank you.